# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES EDWARD WOOD, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOE, STEVE DOE, and CORRECTIONAL MEDICAL SERVICES, <br><br> Defendants. | Case No. 1:11-cv-00254-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC), currently housed at the Idaho State Correctional Institution (ISCI). The Clerk of Court conditionally filed Plaintiffs' Complaint as a result of his status as an inmate and his in forma pauperis request. (Dkts. 1, 6). The Court reviews Plaintiff's Complaint (Dkt. 3) to determine whether it should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order requiring that Plaintiff amend his Complaint.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

According to the Complaint, on May 13, 2009, Plaintiff suffered a seizure while walking laps outdoors. *Complaint*, 4 (Dkt. 3). Plaintiff was immediately sent to St. Alphonsus for an MRI. *Id*. at 5. The following day, Plaintiff was diagnosed with a large brain tumor. *Id*. at 5. On May 17, 2009, Plaintiff underwent emergency brain surgery in an attempt to save his life. *Id*. at 5-7. Immediately following the surgery, when he regained consciousness, Plaintiff found that the right side of his body was paralyzed. *Id*. at 6. It is unclear from the Complaint how long the paralysis lasted or if it is permanent. Since he claims that he was made to stand prior to leaving the hospital, it appears that he regained at least partial use of his right side. *Id*. at 10-11. It was later revealed that the tumor was stage-two cancerous. *Id*. at 6. Plaintiff states he suffered one seizure while recovering from the surgery. *Id*. at 6.

Ten days after the surgery, on May 27, two IDOC officers, identified only as John Doe and Steve Doe, took Plaintiff back to ISCI over the objections of Plaintiff's duty nurse. *Id*. at 8. Plaintiff states that the nurse told the Doe defendants that Plaintiff had not been discharged by his doctor, and that more testing was necessary before Plaintiff could be discharged. Nonetheless, they took Plaintiff back to ISCI along with a bag of his medications for use during Plaintiff's further recovery at the prison.

Upon returning to ISCI, Plaintiff alleges that while removing his restraints, Steve Doe made Plaintiff stand and put all of his weight on his right leg, which was still suffering the effects of the surgery. *Id*. at 10. This caused Plaintiff to fall and become

**MEMORANDUM DECISION AND ORDER - 2**

injured, hitting his head, on the concrete floor. *Id*. While waiting for a wheelchair to take him to the infirmary, Plaintiff had another seizure, with the implication that it was a result of the fall. *Id*. at 11.

Once Plaintiff made it to the infirmary, he requested his pain medication from Dr. Yurosek, which was supposed to have been brought to there by John Doe. *Id*. at 10-11. Instead, Plaintiff claims that CMS Nurse Kathy offered Plaintiff two ibuprofen. *Id*. at 13. When he again asked for his prescribed medication, Dr. Yurosek stated to Plaintiff that the hospital did not prescribe any medications for Plaintiff. Id. at 14. Later, Plaintiff states that Dr. Yurosek refused the medications because of CMS policy regarding narcotics. *Id*. at 15. Five days after requesting them, on June 1, 2009, Plaintiff is given his medications.[1] *Id*. at 16. During this time, Plaintiff claims to have suffered several painful and debilitating seizures. *Id*. at 15-16. Plaintiff also claims that when he reported these issues to the Health Services Administrator, Larry Hines, Hines not only ignored Plaintiff's concerns, but requested that Plaintiff keep the incidents confidential. *Id*. at 15.

Nearly two months later, on July 30, 2009, one day before Plaintiff was to begin his parole, the Director of Nursing, Jennifer Donaldson confiscated his anti-seizure medication. *Id*. at 18. The next day, when he requested the standard two week supply of his anti-seizure medication, Donaldson denied his request and provided him instead with a prescription for the medicine. *Id*. at 18-19. Plaintiff claims that he did not have the

---

[1] It is unclear from the complaint what specific medications were being denied, though Plaintiff makes reference to both pain medication and anti-seizure medication. Plaintiff claims that his assigned nurse at St. Alphonsus put all of his medicine in a bag, stapled it shut, and gave it to the Doe defendants.

**MEMORANDUM DECISION AND ORDER - 3**

funds to fill the prescription, and as a result of Donaldson's confiscation of the medication and denial of "in-hand medication," Plaintiff "began having severe seizures right out the gate, my medical condition rapidly deteriorated to the point I was unable to care for myself because of [the] seizures...." *Id*.

Plaintiff makes claims of: (1) Deliberate indifference to medical conditions; (2) cruel and unusual punishment; (3) ignoring obvious medical conditions; and (4) failure to provide treatment for diagnosed medical conditions.

Plaintiff lists only John Doe, Steve Doe, and Correctional Medical Services as Defendants. However, he also refers to Dr. Yurosek, Nurse Kathy, Larry Hines, and Jennifer Donaldson as Defendants throughout the complaint.

## LEGAL STANDARD

The Court is required to review inmate and in forma pauperis complaints seeking relief against a governmental entity or government employees to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 and 1915A. The Court must dismiss a complaint or any portion thereof that states a claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. §§ 1915(e) and 1915A.

Plaintiffs bring claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 4**

Based on the allegations made in the complaint, the Court will construe them as violations of his Eight Amendment right to be free from cruel and unusual punishment.

## DISCUSSION

**1.     Amendment Required**

At this stage, Plaintiff's claims are too vague to permit him to proceed. In particular, the identification and personal participation of each Defendant must be explained more sufficiently. To be clear though, Plaintiff's allegations are sufficient to state a constitutional complaint, but more facts, and better organization of the Complaint is necessary to proceed.

Thus, to aid the Court in reviewing his claims, Plaintiff will be required to file an amended complaint. Instead of using the format used in the original Complaint, Plaintiff shall organize his amended complaint by causes of action against each Defendant. For each cause of action, Plaintiff shall state the following: (1) the name and job title of the person who personally participated in causing the alleged deprivation of Plaintiff's federal rights; (2) facts showing the person is a state actor; (3) the dates on which the conduct of the Defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional or unlawful under a federal statute (in other words, how each Defendant personally participated in the alleged violation); (5) the particular federal law provision under which Plaintiff makes the claim; (6) the injury or damages suffered; and (7) the particular type of relief he is seeking from each Defendant. There is no need to use the "traditional" pleading format of providing a separate listing of Defendants, a separate

**MEMORANDUM DECISION AND ORDER - 5**

listing of facts, and a separate listing of causes of action; in fact, use of this format has resulted in filing a pleading too vague for review or response.

Plaintiff should also consider the following in amending his complaint:

### A. Exhaustion of Administrative Remedies

For each cause of action asserted, it is highly recommended that Plaintiff state when and how he exhausted his administrative remedies by proceeding through all of the levels of the prison grievance procedure, including appeal to the warden (or appropriate level of medical administrator if a medical claim). The Court is not making exhaustion of administrative remedies a pleading requirement here, but a complaint may be subject to dismissal by motion if a plaintiff has failed to exhaust administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007) ("failure to exhaust remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Title 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Booth v. Churner*, 532 U.S. 731 (2001).

### B. Section § 1983 Eighth Amendment Claim

Plaintiff brings claims under the civil rights statute. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 6**

Plaintiff's factual allegations state a colorable Eighth Amendment claim. However, Plaintiff should be aware that, to prevail on an Eighth Amendment claim regarding prison medical care, he must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

In order to proceed against CMS as an entity, Plaintiff must state facts meeting the test articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94 (1978).[2] Under *Monell*, requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). Plaintiff has not alleged facts sufficient to state such a claim against PHS or CMS.

Plaintiff is also advised that the Clerk of Court cannot effect service upon John Doe or Steve Doe Defendants. Therefore, Plaintiff shall have until January 6, 2012, in which to amend his Complaint to assert the true names of John and Steve Doe

---

[2] *See, e.g., Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (cataloguing circuit court cases applying *Monell* to private entities).

**MEMORANDUM DECISION AND ORDER - 8**

Defendants, or claims against them shall be dismissed. *Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir.1999).

Plaintiff is further advised that every Defendant must be named to proceed against them. In his complaint, Plaintiff addresses several individuals as "Defendant," but does make clear that they are actual defendants in this case. If Plaintiff is unable to state specific allegations against each identified Defendant, that Defendant should be omitted from the amended complaint. Plaintiff may still seek to add a claim at a later date if he obtain further information through discovery that would support such a cause of action.

**2.     Motion to Proceed in forma pauperis**

In order for any litigant to file a civil complaint in federal court, that litigant must either pay the filing fee in full at the time of filing or seek in forma pauperis status, which allows the litigant to pay the filing fee over time. In either case, the litigant must pay the full filing fee for having filed the complaint, regardless of whether that person's case is eventually dismissed or is unsuccessful.

Plaintiff has filed a Motion to Proceed in Forma Pauperis, supported by an affidavit of assets and a prison trust account statement. In his affidavit, Plaintiff states that he has no money at all. Plaintiff alleges that he has no cash, checking or savings accounts, and that he does not own an interest in real estate, stocks, bonds, notes, automobiles or other valuable property. Plaintiff's prisoner trust account statement shows a balance of $0.00. Plaintiff also alleges that he is not currently employed.

Based upon the foregoing statements of Plaintiff's current financial condition, the

**MEMORANDUM DECISION AND ORDER - 9**

Court finds it appropriate to grant his Motion to Proceed in forma pauperis, which allows Plaintiff to pay the filing fee over time according to the schedule set forth in 28 U.S.C. § 1915(b)(1).

Because the Court does not know the current balance of Plaintiff's account, it will waive payment of an initial partial filing fee. Plaintiff shall be required to make monthly payments of twenty (20) percent of the preceding month's income credited to his institutional account. The agency having custody of Plaintiff shall forward payments from his account to the Clerk of the Court each time the amount in the account exceeds ten (10) dollars, until the filing fees are paid in full.

**5.    Conclusion**

Plaintiff will be given until January 6, 2012, in which to file an amended complaint. Thereafter, the Court will perform another review of the claims to determine which can proceed.

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's Complaint (Dkt. 3) is DISMISSED without prejudice; Plaintiff will be given until January 6, 2012, in which to file an amended complaint.

2. Motion for in forma pauperis status (Dkts. 1, 6) is GRANTED. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action according to the schedule set forth herein. Plaintiff will not be assessed an initial partial filing fee at this time.

3. Plaintiff Motion to be Bound to District Court (Dkt. 8) is DENIED as

   MOOT.



DATED: **November 14, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge